MJR

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**M07-0110**

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

   - against -

LOUIS CHAN and
YU FEI LAM,

              Defendants.

COMPLAINT

(21 U.S.C. §§ 841(a)(1),
and 846)

- - - - - - - - - - - - - - - - -X

EASTERN DISTRICT OF NEW YORK, SS:

       HOWARD SHU, being duly sworn, deposes and states that he is a Special Agent of the United States Drug Enforcement Administration ("DEA"), duly appointed according to law and acting as such.

       Upon information and belief, on or about January 24, 2007, within the Eastern District of New York, the defendants LOUIS CHAN and YU FEI LAM, did conspire to possess with intent to distribute a substance containing heroin, a Schedule I controlled substance, in an amount of 100 grams or more.

       (21 U.S.C. §§ 846 and 841(b)(1)(B)(i)).

       The source of your deponent's information and the grounds for his belief are as follows:[1]

       1.   I have been a Special Agent of the DEA since June 2003. Through my work with the DEA, I have participated in numerous narcotics investigations, during the course of which I

---

[1]   Because the purpose of this complaint is to state only probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

have conducted or participated in surveillance, execution of search warrants, debriefings of informants, investigations utilizing Title III wiretaps and reviews of taped conversations and narcotics records.

2. The DEA received information from a reliable source that a narcotics transaction would be taking place on January 24, 2007 at a Burger King on 144-74 Northern Boulevard in Flushing, New York. In response, the DEA set up surveillance at that location.

3. During the course of that surveillance, at approximately 2:00 p.m. surveillance agents observed a black Porsche SUV in the Burger King parking lot. At that time a female, later identified as the defendant YU FEI LAM, walked over to the vehicle, opened the driver's side door, entered the vehicle, and closed the door. After approximately two minutes, LAM got out of the vehicle and stood next to the driver's side front door with the door open. After standing next to the vehicle for another minute or so, LAM then removed a white bag from the vehicle, squatted down and placed the bag underneath the vehicle on the driver's side.

4. After placing the white bag underneath the vehicle, LAM removed a blue plastic bag from the vehicle. LAM then closed the drivers' side door, stepped approximately 30 to 40 feet away from the vehicle while holding the blue plastic bag, and began to pace back and forth in front of the Burger King

3

restaurant.  While pacing in front of the Burger King restaurant, LAM was observed engaging in conversation on her cell phone.

5.  Approximately 15 minutes later, an individual later identified as the defendant LOUIS CHAN, was observed entering the parking lot on foot.  CHAN immediately walked over to the Porsche SUV.  CHAN was then observed looking around the parking lot for a few moments.  CHAN then squatted down next to the Porsche SUV, grabbed the white plastic bag and walked to a black livery cab which had pulled in to the parking lot just after CHAN arrived there.  CHAN entered the black livery cab through the front passenger door.  After CHAN closed the door, the cab started to pull away.  Before the black livery cab could exit the parking lot, it was stopped and both CHAN and LAM were placed under arrest.

7.  The arresting agents found the white plastic bag in the rear seat of the livery cab.  The white plastic bag was found to contain a package which was wrapped in plastic and paraffin.  Inside was a block containing a substance which field tested positive for a substance containing heroin.  The weight of the substance inside the wrapping was approximately 400 grams.

6.  After his arrest, CHAN was asked in Mandarin for consent to search his apartment, located at 5321 8th Avenue, Brooklyn, New York.  CHAN gave consent to the search verbally and in writing.  Just before the search was commenced, CHAN was asked if there was any contraband present in his apartment.  CHAN informed the agents that there was a gun underneath his bed.

4

Subsequently, the searching agents found a loaded pistol underneath CHAN's bed.

7. After LAM's arrest, she was advised of her <u>Miranda</u> rights, in Mandarin, verbally and in writing. After waiving her rights, LAM stated that earlier that day, she met with CHAN, who she knew as "Ah-Chung." LAM stated that at that time, CHAN placed the white plastic bag in her vehicle and informed her that the package was worth $75,000. LAM further stated that she had gone to the Burger King to meet a friend, and that after she had met her friend, she called LAM to come and retrieve the package.

WHEREFORE, your deponent respectfully requests that the defendants LOUIS CHAN and YU FEI LAM be dealt with according to law.

_____
HOWARD SHU
Special Agent
Drug Enforcement
Administration

Sworn to before me this
25th day of January, 2007.

_____
HONORABLE MARILYN D. GO
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK